## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZUNIR WILSON-WALKER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-3493** |
| | : | |
| **MONTCO DETECTIVE ANTHONY** | : | |
| **CASO, CAROLINE GOLDSTEIN,** | : | |
| **ESQ., COURTNEY MCMONAGLE,** | : | |
| **ESQ., EDWARD F. MCCANN, JR.** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                      **August 19, 2025**

A detective investigates possible criminal conduct and may testify about his findings. Prosecutors present evidence to judges of potential crimes. We today screen an incarcerated person's claims seeking to stop the latest serious criminal charges against him from progressing in state court by suing the investigating detective and three prosecutors who gathered and presented evidence necessary to hold him for trial during his preliminary hearing six months ago. He sues these state actors for violating his civil rights and under Pennsylvania law. We must abstain from interfering in the ongoing criminal prosecution and dismiss those equitable claims.

We also dismiss his claims for damages from the prosecutors as they are immune for presenting evidence to a judge and from the detective as he is immune for his preliminary hearing testimony. The incarcerated person also pleads no basis for us to plausibly infer the detective violated an undefined constitutional right by interviewing a witness allegedly leading to charges. We dismiss his federal claims and decline to exercise supplemental jurisdiction over his Pennsylvania defamation claims. We grant the incarcerated person leave to timely amend if he can plead damages against non-immune parties on a federal question which does not try to interfere or

stop an ongoing prosecution where he is afforded the ability to present his concerns through counsel.

## I.  Pro se alleged facts

The Commonwealth detained Zunir Wilson-Walker at the Montgomery County Correctional Facility in early 2025 awaiting trial in the Montgomery County Court of Common Pleas on criminal charges.[1] While Mr. Wilson-Walker remained detained in the Facility, Lower Providence Township Detective Anthony Caso arrested Mr. Wilson-Walker on January 28, 2025 for criminal solicitation–murder of the first degree and other charges relating to a murder-for-hire plot.[2] Detective Caso asked if Mr. Wilson-Walker had any questions, but failed to advise Mr. Wilson-Walker of his *Miranda* rights,[3] took photographs of Mr. Wilson-Walker without explaining the reason for the photographs, and other unidentified persons at the Facility took more photographs of Mr. Wilson-Walker during fingerprinting and processing.[4]

Facility staff and other incarcerated persons approached Mr. Wilson-Walker the next day after seeing reports on the local news and social media platforms about his alleged involvement in a murder-for-hire plot.[5] Mr. Wilson-Walker became shocked, depressed, embarrassed, and "scared for [his] life" because of the negative publicity on the news and social media and his family began "looking at him differently."[6] Mr. Wilson-Walker alleges the publicity on social media, allegedly "put out there" by the "Lower Providence Detective," portrayed him as a "monster" which could possibly affect receiving a fair trial by jury.[7]

Detective Caso approached the mother of Mr. Wilson-Walker's child before charges were filed to convince the child's mother to "bring other allegations" against Mr. Wilson-Walker based on events occurring over two years ago.[8] Detective Caso "put out this publicity" regarding two-

year-old events with "no proof" all in an attempt to make the murder-for-hire case "look good" in violation of the Sixth Amendment.[9]

Mr. Wilson-Walker appeared for his preliminary hearing on February 11, 2025 where Detective Caso testified and denied seeing an Instagram post allegedly the basis of the murder-for-hire plot as the Commonwealth charged.[10] Detective Caso also testified no one "was hurt, killed, or stalked or hired and there was no communication" to commit a murder-for-hire crime but Mr. Wilson-Walker believes Detective Caso nevertheless "decided to destroy [Mr. Wilson-Walker's] life and cause [him] pain, humiliation, trauma [and] menta[l] distress," violating the Eighth Amendment's prohibition on cruel and unusual punishment.[11]

During the February 11, 2025 preliminary hearing, Montgomery County Assistant District Attorneys Caroline Goldstein, Courtney McMonagle, and Edward F. McCann, Jr. charged Mr. Wilson-Walker with additional offenses without proof based on events occurring nearly two years ago.[12] The Assistant District Attorneys "made [Mr. Wilson-Walker] out to be a monster" to "destroy his character and reputation to the world," discriminated against him based on his race, and conspired with Detective Caso to discriminate against him and destroy his life.[13]

## II. Analysis

Frequent litigant and incarcerated Mr. Wilson-Walker now sues Detective Caso and Assistant District Attorneys Goldstein, McMonagle, and McCann for violations of his Sixth, Eighth, and Fourteenth Amendment rights and common law claims of slander, defamation of character and reputation, and malicious intent and prosecution.[14] He claims psychological and mental harm, humiliation and embarrassment, and schizophrenia and the need for psychiatric care while in the custody of the Commonwealth in the facility where he is currently housed. Mr. Wilson-Walker seeks relief requesting us to "properly investigate the Defendants['] actions," a

3

declaration Defendants violated his constitutional rights, $1 million in compensatory damages, $650,000 in punitive damages, and costs of suit.[15]

Congress requires us to screen a complaint in a civil action brought by an incarcerated person "seek[ing] redress from a governmental entity or officer or employee of a governmental entity."[16] Congress directs our screening to "identify cognizable claims" or dismiss all or part of a complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief."[17] We may also screen an incarcerated person's complaint under section 1915(e)(2)(B) requiring us to dismiss an action at any time if we determine it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[18]

When considering in our screening obligations whether to dismiss a complaint for failure to state a claim under section 1915A(b)(1) and section 1915(e)(2)(B)(ii), we apply the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[19] Rule 12(b)(6) requires Mr. Wilson-Walker to plead enough facts to state a claim for relief plausible on its face.[20]

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] While "[t]he plausibility standard is not akin to a 'probability requirement,' it does require the pleading show 'more than a sheer possibility that a defendant has acted unlawfully.'"[22] "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient."[23] We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a pro se litigant's pleadings . . . particularly when the pro se litigant is imprisoned."[24] We are to "remain

flexible" with incarcerated pro se litigants and "apply the relevant legal principle even when the complaint has failed to name it."[25] But "pro se litigants must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules–they must abide by the same rules that apply to all other litigants."[26]

We apply the relevant standards to Mr. Wilson-Walker's pro se complaint against Detective Caso and Assistant District Attorneys Goldstein, McMonagle, and McCann. We readily conclude he does not state a claim under the Sixth, Eighth, or Fourteenth Amendments, Detective Caso and the Assistant District Attorneys are immune from suit for money damages for their testimony or arguments in court, and we may not enjoin the ongoing state court criminal proceeding against Mr. Wilson-Walker under *Younger v. Harris*.[27] Mr. Wilson-Walker does not plead facts allowing us to plausibly infer Detective Caso's interviewing a witness violated his Fourteenth Amendment rights requiring we dismiss this claim without prejudice. We decline to exercise supplemental jurisdiction over his Pennsylvania defamation claims and he may pursue those claims in state court.

### A. We cannot enjoin the ongoing Montgomery County state court criminal prosecution against Mr. Wilson-Walker.

The core of Mr. Wilson-Walker's Complaint is a challenge to the murder-for-hire charges against him currently pending in a criminal prosecution in the Montgomery County Court of Common Pleas. He denies the charges, challenges Detective Caso's testimony at the February 11, 2025 preliminary hearing, challenges Detective Caso's investigation, objects to Detective Caso's failure to advise him of his rights under *Miranda*, objects generally to the negative publicity generated by the murder-for-hire charges broadcasted on local news outlets and social media possibly tainting a jury, challenges the sufficiency of evidence forming the basis of additional charges the Assistant District Attorneys presented at the February 11, 2025 Preliminary Hearing,

and objects generally to the conduct of the Assistant District Attorneys in prosecuting the murder-for-hire charges against him.

Mr. Wilson-Walker asks us to "properly investigate the Defendants' actions" and declare Defendants violated his constitutional rights in bringing the murder-for-hire charges in the already pending and ongoing Montgomery County criminal action against him. We cannot provide the injunctive relief Mr. Wilson-Walker seeks because to do so would interfere with the ongoing state court criminal proceeding expressly prohibited by the Supreme Court in *Younger*.

A federal court has a "virtually unflagging" obligation to hear and decide cases within its jurisdiction.[28] The Supreme Court in *Younger* recognized an exception to this general rule: absent extraordinary circumstances, a federal court cannot enjoin an ongoing state-court criminal proceeding.[29] A federal court's abstention under *Younger* serves the dual purposes of promoting comity—"a proper respect for state functions"—by restricting federal courts from interfering with ongoing state judicial proceedings and restraining "equity jurisdiction from operating when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm."[30]

We are directed by our Court of Appeals to abstain under *Younger* where (1) there are ongoing state proceedings judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.[31] If these requirements are met, abstention under *Younger* may be inappropriate if the plaintiff in the federal action can establish "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will

present a significant and immediate potential of irreparable harm to the federal interests asserted."[32]

The requirements for *Younger* abstention are met here: there is an ongoing state criminal proceeding in the Montgomery County Court of Common Pleas, the Commonwealth's prosecution implicates its important interest in enforcing its criminal laws and prosecuting criminal behavior, and the Montgomery County proceeding where Mr. Wilson-Walker is represented by counsel affords him an opportunity to raise federal constitutional defenses to the criminal charges. There are no allegations demonstrating the Commonwealth's prosecution on the murder-for-hire charges has been undertaken in bad faith or for purposes of harassment or extraordinary circumstances exist. Mr. Wilson-Walker disputes the charges against him but the Commonwealth's pending criminal case against him provides him "a fair and sufficient opportunity for vindication of federal constitutional rights" through his attorney.[33]

Because Mr. Wilson-Walker seeks both declaratory relief and money damages, we may, in the exercise of our discretion, dismiss claims for declaratory relief.[34] We abstain under *Younger* requiring we dismiss Mr. Wilson-Walker's requested injunctive relief to declare Detective Caso and the Assistant District Attorneys violated his constitutional rights in the ongoing prosecution without prejudice to pursuing relief in state court.

**B. Mr. Wilson-Walker does not plausibly state constitutional claims for damages under the Sixth, Eighth, or Fourteenth Amendments.**

Mr. Wilson-Walker seeks money damages from Detective Caso and the three Assistant District Attorneys for alleged violations of his Sixth, Eighth, and Fourteenth Amendment rights.[35]

He does not plausibly state claims for constitutional violations. We dismiss his claims for damages under section 1983 for failure to state claims.

Mr. Wilson-Walker alleges the publicity surrounding the murder-for-hire charges against him allegedly disseminated by Detective Caso "could possibly effect me [sic] having a fair jury trial."[36] He also alleges publicity in Montgomery County may affect him in Delaware County and Philadelphia County.[37]

The Sixth Amendment guarantees the right to trial by an impartial jury.[38] A ***conviction*** may be overturned where a "trial atmosphere was so pervaded by publicity that no jury could be empaneled [sic] which did not have a preconceived determination of guilt."[39] Mr. Wilson-Walker has not yet been tried, and thus not convicted, on the murder-for-hire charges. Indeed, he alleges the publicity around the murder-for-hire charges "could possibly" affect him. His claim is not ripe.

The Constitution limits our jurisdiction to fully-ripened disputes.[40] We do not review claims which "depend[ ] on contingent future events that may not occur as anticipated, or indeed may not occur at all."[41] Mr. Wilson-Walker's  claim publicity "could possibly" affect a trial that has not yet happened is unripe, we lack jurisdiction, and we dismiss the Sixth Amendment claim.[42]

Mr. Wilson-Walker next alleges the publicity disseminated by Detective Caso caused him pain, humiliation, trauma, and mental distress, made him feel he "can never be [a] regular citizen ever again without looking over his shoulder," and prevented him from taking care of his children, affording mental health treatment, and obtaining a job because of the negative publicity all in violation of his Eighth Amendment right to be free of cruel and unusual punishment.[43] Mr. Wilson-Walker does not allege what Detective Caso publicized and to whom he publicized information. Mr. Wilson-Walker alleges the murder-for-hire charges appeared in local news reports and on social media but we do not know who did what and when. To the extent Mr. Wilson-Walker

intended to assert a defamation claim against Detective Caso under Pennsylvania law, it does not, standing alone, deprive Mr. Wilson-Walker of a constitutional right.[44]

The Eighth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits state actors from inflicting "cruel and unusual punishments."[45] The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" against which courts "must evaluate penal measures."[46] Punishments "incompatible with the evolving standards of decency that mark the progress of a maturing society" or "involve the unnecessary and wanton infliction of pain" violate the Eighth Amendment.[47] When we consider a claim of constitutionally violative prison conditions, we look for allegations facility officials "deprived the [incarcerated person] of the minimal civilized measure of life's necessities" and "acted with deliberate indifference in doing so, thereby exposing the [incarcerated person] to a substantial risk of serious damage to [his] future health."[48]

Mr. Wilson-Walker's allegations are directed at the conduct of Detective Caso and the Assistant District Attorneys, not deprivation by officials within the Facility. We cannot find authority suggesting a state actor's publication of criminal charges rises to the level of an Eighth Amendment violation. We dismiss the Eighth Amendment claim based on publicity.

Mr. Wilson-Walker complains about Detective Caso's investigation of the murder-for-hire charges by attempting to "convince" the mother of Mr. Wilson-Walker's child to "bring other allegations upon me that never happen[ed] to make the publicity he put out there look even better like I'm again this monster . . ."[49] We have no other allegations regarding the witness interview or the context of Detective Caso's interview of the mother of Mr. Wilson-Walker's child or how the interview of the witness violates a constitutionally protected right under the Sixth, Eighth, or Fourteenth Amendments invoked by Mr. Wilson-Walker. Mr. Wilson-Walker does not meet

Federal Rule of Civil Procedure 8 requiring a "short and plain statement" of this "witness interview" claim to give "fair notice of what the claim is and the grounds upon which it rests."[50] Although our Court of Appeals directs us to liberally construe pro se pleadings, a pro se complaint must allege sufficient facts to support a claim.[51] A complaint must present cognizable legal claims to which a defendant can respond on the merits.[52]

Mr. Wilson-Walker alleges Detective Caso violated his Fourteenth Amendment rights. There are no facts alleged from which we may infer a Fourteenth Amendment claim against Detective Caso. We dismiss this claim for lack of plausibly pleaded facts.

With regard to the Assistant District Attorneys, we infer a possible Fourteenth Amendment equal protection claim based on an allegation the prosecutors "made [him] out to be a monster [and] totally discriminated [against him] because the color of [his] skin."[53] The Fourteenth Amendment's Equal Protection Clause protects incarcerated persons from invidious discrimination based on race.[54] Mr. Wilson-Walker must allege facts the Assistant District Attorneys treated him differently from others similarly situated based on race.[55] But we have no allegations of how the Assistant District Attorneys treated him differently based on his race and the similarly situated comparators who were treated more favorably. Mr. Wilson-Walker does not state a Fourteenth Amendment equal protection claim and we dismiss it.

### C. The Assistant District Attorneys and Detective Caso are immune from money damages in the section 1983 claims.

Even if Mr. Wilson-Walker plausibly stated claims seeking damages against Detective Caso and Assistant District Attorneys Goldstein, McMonagle, and McCann for alleged

constitutional violations, the Assistant District Attorneys are absolutely immune from suit and Detective Caso is immune for his testimony during the preliminary hearing.

### 1. The Assistant District Attorneys are absolutely immune from liability under section 1983.

Mr. Wilson-Walker alleges Assistant District Attorneys Goldstein, McMonagle, and McCann sought additional charges against him at the February 11, 2025 Preliminary Hearing, pursued charges based on victim testimony Mr. Wilson-Walker disputes and on old information, and made Mr. Wilson-Walker "out to be a monster." Mr. Wilson-Walker appears to challenge the prosecutors' decision to prosecute him and their conduct at the February 11, 2025 Preliminary Hearing.

Prosecutors are absolutely immune from liability under section 1983 for conduct in "initiating a prosecution and in presenting the State's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process."[56] We are directed by our Court of Appeals to focus on the "functional nature" of the prosecutors' activities rather than their status to determine if absolute immunity is warranted.[57] Conduct arising from a prosecutor's conduct in beginning a prosecution including soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings, presenting the state's evidence at trial, and appearing in court to present evidence all fall within the work "intimately associated with the judicial phase of the criminal process" for which prosecutors are absolutely immune.[58] The Assistant District Attorneys' conduct as alleged here occurred within the prosecutorial function of the judicial phase

of the criminal process and, based on the current allegations, the Assistant District Attorneys are absolutely immune from suit under section 1983.

### 2. Detective Caso is entitled to immunity as a witness.

Mr. Wilson-Walker asserts claims against Detective Caso because he allegedly interviewed the mother of Mr. Wilson-Walker's child before being charged on January 28, 2025 to "make the publicity [Detective Caso] put out there look even better like I'm again this monster," publicized the charges, and testified at the February 11, 2025 Preliminary Hearing.

Detective Caso is protected by absolute witness immunity from suits under section 1983 based on his testimony at the February 11, 2025 Preliminary Hearing[59] We dismiss claims based on Detective Caso's testimony at the Preliminary Hearing as absolutely immune.

### D. We decline to exercise supplemental jurisdiction.

We may decline to exercise supplemental jurisdiction when we dismiss all claims over which we have original jurisdiction.[60] Having dismissed Mr. Wilson-Walker's federal claims, we decline to exercise jurisdiction over the supplemental state law defamation, slander, and malicious prosecution claims.

## III.  Conclusion

We, consistent with our Congressionally mandated obligations, screened the incarcerated Mr. Wilson-Walker's latest allegations against state actors. He today sues an investigating detective for allegedly telling people he is accused of murder-for-hire (as also shown in news reports and social media posts), for testifying at a preliminary hearing, and for possibly speaking to a witness relating to charges against Mr. Wilson-Walker. He also sues three prosecuting attorneys for presenting evidence of his alleged crimes to a judge.

Mr. Wilson-Walker offers no basis to find this conduct violates a constitutional right. The prosecutors are immune for their presentation of evidence. Detective Caso is immune for his witness testimony. We dismiss Mr. Wilson-Walker's claims for money damages against Detective Caso, as well as his state law claims, without prejudice should Mr. Wilson-Walker be able to plead facts allowing us to plausibly infer Detective Caso's alleged interview of the mother of his child violated a constitutional right.

---

[1] ECF 2 at 6 (using the pagination assigned by the CM/ECF docketing system). In January 2025, the Commonwealth held Mr. Wilson-Walker in the Montgomery County Correctional Facility as a pretrial detainee on two criminal cases then pending in the Montgomery County Court of Common Pleas: *Commonwealth v. Wilson-Walker*, No. CP-46-CR-0000337-2024 and *Commonwealth v. Wilson-Walker*, No. CP-46-CR-0000338-2024.

[2] *Id*. We take judicial notice of the Montgomery County Court of Common Pleas docket in *Commonwealth v. Wilson-Walker*, No. CP-46-CR-0000770-2025. The docket reflects Montgomery County Detective Caso arrested Mr. Wilson-Walker on January 28, 2025 and Magisterial District Judge Henry J. Schireson set bail the same day.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] ECF 2 at 6.

[5] *Id*.

[6] *Id*.

[7] *Id*.

[8] *Id*. at 7.

[9] *Id*.

[10] *Id*.

[11] *Id*.

[12] *Id*. at 8. Mr. Wilson-Walker also believes the Assistant District Attorneys prosecuting the case decided to pursue charges after contacting the victim of the alleged murder-for-hire case to "get information" to help in their prosecution. *Id.* Mr. Wilson-Walker believes the Assistant District Attorneys "have possibly also made a potential deal to ignore" the "criminal participation" of

Ahjhair Blackwell in exchange for information. *Id.* We have no pleaded facts from which to draw any inferences as to the context of Ms. Blackwell and relevance to this case.

[13] *Id.*

[14] *Id.* at 2, § II.B. This complaint is one of nine complaints assigned to our calendar brought by Mr. Wilson-Walker against various municipalities, state actors, correctional facilities, and health care providers alleging constitutional violations related to his confinement at County and State facilities since 2021. Actions captioned *Wilson-Walker v. City of Phila.*, No. 21-3058; *Wilson-Walker v. Williams*, No. 24-2773; *Wilson-Walker v. Gambone*, No. 24-4828; *Wilson-Walker v. Williams*, No. 24-4843; *Wilson-Walker v. SCI-Phoenix*, No. 25-3494; *Wilson-Walker v. Phila. Police Dep't*, No. 25-3496; and *Wilson-Walker v. Glen Mills Schools*, No. 25-3760 are now closed. Two cases on our calendar are ongoing: *Wilson-Walker v. Spaid*, No. 25-1994 and this case. Mr. Wilson-Walker has another pending case assigned to Judge Wells's calendar, *Wilson-Walker v. George W. Hill Correctional Facility*, No. 24-2773. In each case, Mr. Wilson-Walker moved to proceed *in forma pauperis* which we granted and then screened as required by Congress under 28 U.S.C. § 1915A.

[15] ECF 2 at 4, § V.

[16] 28 U.S.C. § 1915A(a).

[17] *Id.* § 1915A(b).

[18] *Id.* § 1915(e)(2)(B)(i)-(iii); *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019) (en banc).

[19] *Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (applying Rule 12(b)(6) dismissal for failure to state a claim analysis to screening under section 1915A(b)(1)); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000) (applying Rule 12(b)(6) dismissal for failure to state a claim to screening under section 1915(e)(2)(B)).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. U.S.*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility . . . a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[21] *Iqbal*, 556 U.S. at 678  (quoting *Twombly*, 550 U.S. at 556).

[22] *Riboldi*, 781 F. App'x at 46 (quoting *Iqbal*, 556 U.S. at 678).

[23] *Id.* (quoting *Iqbal*, 556 U.S. at 678)

[24] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (first quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); then citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

[25] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Higgs*, 655 F.3d at 339).

[26] *Yogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[27] 401 U.S. 37 (1971).

[28] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)).

[29] *Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023) (citing *Younger*, 401 U.S. at 41, 45).

[30] *PDX North, Inc. v. Comm'r New Jersey Dev. of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (citing *Sprint Commc'ns*, 571 U.S. at 77).

---

[31] *Lui v. Comm'n on Adult Entm't Establishments of the State of De.*, 369 F.3d 319, 326 (3d Cir. 2004).

[32] *Jaffery v. Atlantic Cnty. Prosecutor's Office*, 695 F. App'x 38, 40 (3d Cir. 2017) (citation omitted).

[33] *Id.* at 41 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)).

[34] *Borowski*, 68 F.4th at 850.

[35] Although Mr. Wilson-Walker does not cite the statute under which he asserts his claims, we consider his constitutional claims as asserted under 42 U.S.C § 1983. Congress through section 1983 provides a remedy for a violation of constitutional rights but it is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. To state a civil rights claim, Mr. Wilson-Walker must allege (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[36] ECF 2 at 6. Mr. Wilson-Walker identifies this as a Seventh Amendment right. The right to a fair and impartial trial is guaranteed by the Sixth Amendment.

[37] *Id.* at 7. It is unclear what Delaware County and Philadelphia County actions Mr. Wilson-Walker refers to or how publicity regarding the murder-for-hire charges in Montgomery County have anything to do with what is going on in Delaware and Philadelphia Counties.

[38] U.S. CONST. AMEND. VI.

[39] *United States v. Claxton*, 766 F.3d 280, 298 (3d Cir. 2014) (emphasis added) (quoting *Gov't of Virgin Islands v. Riley*, 973 F.2d 223, 226 (3d Cir. 1992)). And pretrial publicity does not "automatically taint a juror." *Id.*

[40] *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 217 (3d Cir. 2023).

[41] *Id.* at 219 (quoting *Trump v. N.Y.*, 592 U.S. 125, 131 (2020)).

[42] We dismiss a Fourth Amendment malicious prosecution claim under section 1983 to the extent Mr. Wilson-Walker attempts to plead this claim. To prevail on such a claim, Mr. Wilson-Walker must show the criminal prosecution ended without a conviction. *Thompson v. Clark*, 596 U.S. 36, 49 (2022). The criminal prosecution is ongoing in the Montgomery County Court of Common Pleas; it has not ended without a conviction.

[43] ECF 2 at 7. Mr. Wilson-Walker also alleges the Assistant District Attorneys "made him out to be a monster" in violation of his Eighth Amendment right. *Id.* at 8.

[44] *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991). To the extent Mr. Wilson-Walker intended to bring a Fourteenth Amendment right-to-privacy claim against Detective Caso, he does not state a claim. The Fourteenth Amendment protects two types of privacy rights: (1) the disclosure of personal information containing "details of one's personal life" and (2) "the interest in independence in making certain kinds of important decisions" which have not been extended beyond "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011) (citations omitted). There are no allegations in either recognized category of protected privacy rights.

[45] U.S. CONST. AMEND. VIII.

[46] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotations and citations omitted).

[47] *Id.* at 102–03 (citations omitted).

[48] *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (citation omitted).

[49] ECF 2 at 7.

[50] *Garrett*, 938 F.3d at 92 (quoting *Erickson*, 551 U.S. at 93).

[51] *Id.*

[52] *Id.* at 93–94.

[53] ECF 2 at 8.

[54] *Whitney v. Wetzel*, 649 F. App'x 123, 128 (3d Cir. 2016) (per curiam) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)).

[55] *Id.* (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

[56] *Simonton v. Ryland-Tanner*, 836 F. App'x 81, 83 (3d Cir. 2020) (per curiam) (internal quotations omitted) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

[57] *Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020).

[58] *Id.* at 159–60 (citations omitted).

[59] *Simonton*, 836 F. App'x at 84 (citing *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983)).

[60] 28 U.S.C. § 1367; *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009).